IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| K. DAVID WILLIAMS and FATIMA K. WILLIAMS, <br> Plaintiffs, <br> <br> v. <br> <br> TOYOTA MOTOR CORPORATION, TOYOTA TECHNICAL CENTER, U.S.A., INC., TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA INC., and TOYOTA MOTOR SALES, U.S.A., INC., <br> Defendants. | § § § § § § § § § § § § § § § | Case No. 4:08-cv-487 |

**ORDER DENYING DEFENDANTS' MOTION TO LIMIT EXPERT TESTIMONY, DENYING DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' EXPERT WITNESS NICK MANGO AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the court are the following:

1. Toyota's Motion to Limit the Testimony of Plaintiffs' Expert Witnesses Steve Syson and Carley Ward (de # 76);

2. Plaintiffs' Response to Toyota's Motion to Limit the Testimony of Plaintiffs' Expert Witnesses Steve Syson and Carley Ward (de # 88);

3. Toyota's Reply Brief in Support of Motion to Limit the Testimony of Plaintiffs' Expert Witnesses Steve Syson and Carley Ward (de # 95);

4. Plaintiffs' Surreply to Toyota's Reply Brief in Support of Motion to Limit the Testimony of Plaintiffs' Expert Witnesses Steve Syson and Carley Ward (de # 97);

5. Toyota's Motion to Strike Plaintiffs' Expert Nick Mango (de # 75);

6. Plaintiffs' Response to Toyota's Motion to Strike Plaintiffs' Expert Nick Mango (de # 82);

7. Toyota's Reply Brief in Support of Motion to Strike Plaintiffs' Expert Witness Nick Mango (de # 85);

8. Plaintiffs' Surreply to Toyota's Reply Brief in Support of Motion to Strike Plaintiffs' Expert Witness Nick Mango (de # 86);

9. Toyota's Motion for Summary Judgment (de # 72);

10. Plaintiffs' Response to Toyota's Motion for Summary Judgment (de # 87); and

11. Toyota's Reply Brief in Support of Motion for Summary Judgment (de # 96).

Having considered the Defendants' *Daubert* motion to limit the testimony of Plaintiffs' experts Steve Syson and Carley Ward, the briefing responsive thereto and the relevant legal principles, the court is of the opinion that the *Daubert* motion should be DENIED. The court finds that the reports proffered by the Plaintiffs' experts are sufficiently reliable for the jury's consideration. With regard to the Motion to strike Nick Mango, the court finds Mango's designation as a rebuttal expert was untimely. However, there being no prejudice to the Defendants, the court is of the opinion that that Motion should be DENIED. The Defendants' Motion for Summary Judgment is premised on the Plaintiffs' lack of admissible expert testimony regarding a safer alternative design for the car seat at issue in this civil action. Having determined that the expert opinions offered by the Plaintiffs are admissible, there remain genuine issues of material fact for a jury to decide regarding the Plaintiffs' defective design theory. The Plaintiffs have not, however, produced competent summary judgment evidence to sustain their burden at this stage regarding their marketing defect theory. Accordingly, the court is of the opinion that the Defendants' Motion for Summary Judgment should be GRANTED IN PART and DENIED IN PART.

**I. BACKGROUND**

This civil action arises out of an auto accident involving K. David Williams, a plaintiff, and Carlos Alberto Castro, a nonparty to this action. Williams was stopped at a traffic light while driving

to work on February 14, 2007 when his 1997 Toyota 4Runner was rear-ended by the empty gravel truck driven by Castro. The impact forced Williams' vehicle forward, causing Williams to move backwards relative to his vehicle. His seat buckled, and Williams struck the back seat with his head, severely injured himself and emerged from the accident as a permanent paraplegic.

Williams sued the Defendants on theories of negligence and strict product liability under Texas law. Among the Plaintiffs' claims is that the driver seat in the 4Runner was defectively designed, rendering it unfit to perform its safety function in rear-end collisions like that experienced by Williams. In support of this theory, the Plaintiffs designated Steve Syson and Carley Ward as experts. Syson has been in automotive design engineering since at least 1971. His expert report concludes that safer alternative seat designs existed at the time Williams' 4Runner was manufactured. Those seats would have been more effective than the 4Runner seat because, Syson opines, they would have "absorbed more energy and reduced the severity of or prevented Mr. Williams' ejection into the rear compartment." (de # 76, Ex. B.) In reaching his conclusions, Syson consulted, among other sources, documents related to the accident and various crash test results and industry literature. Ward has served as a biomechanical engineering witness since 1980. Ward's expert report examined a body of literature and drew conclusions as to the movement and position of Williams' body during and after the accident. Her report concludes with an opinion that the seat's failure caused Williams' injuries. (*Id*. at Ex. C.) The Defendants move to exclude the testimony offered by both Syson and Ward.

## II. DISCUSSION AND ANALYSIS

A.  *Motion to Exclude Syson and Ward*

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590-93 (1993), the Supreme

Court instructed district courts to function as gatekeepers and determine whether expert testimony should be presented to the jury. District courts must ensure that a proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Moreover, in order to be admissible, expert testimony must be "not only relevant, but reliable." *Daubert*, 509 U.S. at 589. The *Daubert* analysis "appl[ies] to all species of expert testimony . . . ." *United States v. Tucker*, 345 F.3d 320, 327 (5th Cir. 2003); *accord Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

In deciding whether to admit or exclude expert testimony, district courts should consider numerous factors. *Daubert*, 509 U.S. at 594. First, the court should consider the question of whether a theory or technique can be tested and has been tested. *Id*. at 593. Second, the court should examine whether the theory or technique at issue "has been subjected to peer review and publication." *Id*. Third, the court should normally consider "the known or potential rate of error" of the challenged method. *Id*. at 594. Fourth, the court may ascertain the degree of acceptance of a particular method or technique. *Id*. In evaluating *Daubert* challenges, district courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Id*.

The *Daubert* factors are not "a definitive checklist or test." *Id*. at 593. As the Court has emphasized, the *Daubert* framework is "a flexible one." *Id*. at 594. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Exploration & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (internal citation omitted).

The Defendants' position is premised on the argument that the proffered expert opinions are unreliable because they are not backed by any testing. This argument is at odds with the data

presented in both expert reports. For example, Syson's report addressed at least two crash tests that measured energy absorption among a number of different seat designs, most of which were in production at the time Williams' 4Runner entered the stream of commerce. Ward's report discusses the effects of the various forces created in a rear crash and their effect on Williams' body. The Defendants do not quite go so far, but to the extent they suggest that these experts should be excluded because they failed to build and test a prototype of an alternative seat design, such a position would be contrary to Texas law. *General Motors Corp. v. Sanchez*, 997 S.W.2d 584, 592 (Tex. 1999). The Defendants also point out the experts' reliance on the accident report created by the Plaintiffs' accident reconstruction expert instead of the report created by the Defendants' accident reconstruction expert. The court, of course, is not entitled to choose which accident reconstruction expert to believe. Should the jury decide that the Defendants' accident reconstruction expert witness offers more credible testimony, it will appropriately discount the testimony given by Syson and Ward. The jury should and will be able to consider their opinions in light of "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof ." *Daubert*, 509 U.S. at 595. Having examined the expert witness reports and applied the *Daubert* factors, the court finds both Syson and Ward to be qualified and their opinions relevant and based upon sufficiently reliable methodology to testify under Rule 702.

B.   *Motion to Exclude Mango*

The Defendants also seek to strike the Plaintiffs' rebuttal witness, Nick Mango, as being untimely designated. The scheduling order established July 14, 2008 as the date by which the Plaintiffs were to designate their expert witnesses. Mango was not among the witnesses designated to offer expert testimony. On August 14, 2008, the Defendants designated their expert witnesses,

including those to whom Mango would eventually offer rebuttal. On September 16, 2008, the Plaintiffs designated Mango as a rebuttal witness. His report offers rebuttal to the reports submitted by Dennis Schneider and, to a lesser extent, David Blaisdell. The Defendants complain that Mango should have been designated as an expert by the date provided in the scheduling order for the Plaintiffs to designate expert witnesses. The Plaintiffs counter by arguing that Mango is a rebuttal expert whose designation was not due until 30 days after the Defendants made their designations.

At the outset, the court finds that Mango's report consists exclusively of rebuttal to the Defendants' experts. His report addresses perceived shortcomings in the Schneider and Blaisdell reports and discusses what data should have been incorporated to shore up those failings. Mango's expert designation is thus governed by Rule 26(a)(2)(C)(ii), which provides that, absent a stipulation or court order to the contrary, experts who offer "evidence [] intended solely to contradict or rebut" another party's expert witness must be designated within 30 days following disclosure of that expert. Any rebuttal to the experts designated on August 14, 2008 was, therefore, due by September 14. Mango's designation was untimely by two days. Rule 37(c)(1) provides in pertinent part that "a party [who] fails to provide information . . . as required by Rule 26(a) . . . is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).

The court looks to four factors to determine whether the untimely designation was substantially justified or harmless. Those factors are:

(1) the explanation, if any, for the party's failure to comply with the discovery order;

(2) the prejudice to the opposing party of allowing the witnesses to testify;

(3) the possibility of curing such prejudice by granting a continuance; and

(4) the importance of the witnesses' testimony.

*Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996). Having reviewed these factors, the court finds that, although untimely designated, Mango should be allowed to present his expert opinions to the jury. The court is guided primarily by the fact that the Defendants have complained of no prejudice in the two-day delay in designating Mango as an expert witness. Even more telling is that the Defendants complain of no prejudice from what they essentially argue to be a *thirty-two day* delay in designating Mango as an expert. Accordingly, Mango will be permitted to offer the expert opinions contained in his report.

C.   *Motion for Summary Judgment*

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Id*. at 255. The substantive law identifies which facts are material. *Id*. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id*. at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure all of the essential elements of

the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 323, 325; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *accord Anderson*, 477 U.S. at 257. In order to create a genuine issue, the evidence "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

As discussed above, the court will allow the Plaintiffs' experts, Ward and Syson, to present their findings to the jury. Their findings address, and offer evidence in support of, the elements of the Plaintiffs' design defect theory regarding Williams' driver's seat. Accordingly, there remain genuine issues of material fact as to that claim, and summary judgment must be denied thereto.

The Defendants also move for summary judgment on the Plaintiffs' marketing defect claim. The Defendants claim that the Plaintiffs have offered no evidence regarding the marketing defect theory. The Plaintiffs counter by indicating that they intend to "supply competent expert evidence to assist the jury in evaluating" the marketing defect claim. (Pls.' Resp. to Mot. for Summ. J. 10.) In order to prevail on their marketing defect claim, the Plaintiffs must establish:

    (1) a risk of harm that is inherent in the product or that may arise from the intended or reasonably anticipated use of the product;

    (2) the supplier of the product knows or reasonably should foresee the risk of harm at the time the product is marketed;

    (3) the product has a marketing defect;

    (4) the lack of warnings or instructions renders the product unreasonably dangerous

>   to the ultimate user or consumer; and
>
>   (5) the failure to warn or instruct causes the user's injury.

*Ranger Conveying & Supply Co. v. Davis*, 254 S.W.3d 471, 480 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

Having reviewed the record, the court finds no evidence to support the Plaintiff's marketing defect theory. The parties make much of whether expert testimony is required under Texas law to establish liability based on a marketing defect. That issue is made moot, however, by the Plaintiffs' failure to adduce evidence of any kind in favor of their theory. The Plaintiffs' assurances that they intend to offer expert testimony supporting their theory are insufficient; at this stage, it is their burden to "present affirmative evidence in order to" defeat the Defendants' Motion. *Anderson*, 477 U.S. at 257; *accord Patton v. Mobile Medic Ambulance Serv., Inc.*, Civ. A. No. 3:07-CV-653, 2009 U.S. Dist. LEXIS 490, at *10 (S.D. Miss. Jan.6, 2009); *American Tourmaline Fields v. Int'l Paper Co.*, Civ. A. No. 3:96-CV-3363-D, 1999 U.S. Dist. LEXIS 13153, at *12-13 (N.D. Tex. Aug. 19, 1999); *Groff v. City of Camden*, Civ. A. No. Civil Action No. 05-780, 2007 U.S. Dist. LEXIS 58933, at *7 n.2 (D. N.J. Aug. 10, 2007). As the Plaintiffs offer no evidence (expert or otherwise) supporting their marketing defect theory, they have not carried that burden. Accordingly, the court finds that no genuine issue of material fact exists regarding the Plaintiffs' marketing defect claim.

### III. CONCLUSION

Based on the foregoing, the court finds that the expert conclusions reached by Syson and Ward are relevant to the issues in this civil action and are based on methodology that is sufficiently reliable so as to allow their presentation to the jury. Accordingly, the court is of the opinion that "Toyota's Motion to Limit the Testimony of Plaintiffs' Expert Witnesses Steve Syson and Carley

Ward" (de # 76) should be, and hereby is, DENIED. The court further finds that the designation of Mango was untimely. However, the court finds that the untimely designation was harmless under Rule 37(c)(1). Accordingly, the court is of the opinion that "Toyota's Motion to Strike Plaintiffs' Expert Nick Mango" (de # 75) should be, and hereby is, DENIED. The court further finds that genuine issues of material fact exist regarding the Plaintiffs' theory of design defect. Accordingly, the court is of the opinion that "Toyota's Motion for Summary Judgment" (de # 72) should be DENIED as it relates to that theory. The court also finds that no genuine issue of material fact exists regarding the Plaintiffs' marketing defect theory. Accordingly, the court is of the opinion that "Toyota's Motion for Summary Judgment" should be, and hereby is, GRANTED insofar as it relates to the Plaintiffs' marketing defect theory.

   IT IS SO ORDERED.

**SIGNED this the 6th day of February, 2009.**

_/s/ Richard A. Schell_
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE