IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| K. DAVID WILLIAMS and FATIMA K. WILLIAMS, §<br>Plaintiffs, § § § | | |
| v. | § | Case No. 4:08-cv-487 |
| TOYOTA MOTOR CORPORATION, TOYOTA TECHNICAL CENTER, U.S.A., INC., TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA INC., and TOYOTA MOTOR SALES, U.S.A., INC., Defendants. § § § § § § § § | | |

## ORDER GRANTING PLAINTIFFS' MOTION TO EXCLUDE

Before the court are the following:

1. Plaintiffs' Motion to Exclude Expert Testimony of Dr. Gary Fowler (de # 70);

2. Toyota's Response to Plaintiffs' Motion to Exclude Expert Testimony of Dr. Gary Fowler (de # 89);

3. Plaintiffs' Reply to Toyota's Response to Plaintiffs' Motion to Exclude Expert Testimony of Dr. Gary Fowler (de # 101); and

4. Toyota's Sur-reply Regarding Plaintiff's Motion to Exclude Expert Testimony of Dr. Gary Fowler (de # 106).

In their Motion, the Plaintiffs ask the court to exclude the Defendants' metallurgical expert, Gary Fowler, on the purported basis that his expert opinions do not conform to the *Daubert* requirements imposed on experts in federal proceedings. Having considered the Motion, the responsive briefing and the relevant legal principles, the court is of the opinion that the Motion should be GRANTED.

### I. BACKGROUND

This civil action arises out of an auto accident involving K. David Williams, one of the

Plaintiffs, and Carlos Alberto Castro, a nonparty. Williams, driving his 1998 Toyota 4Runner, was stopped at a traffic light in Lewisville, Texas on the morning of February 14, 2007 when he was rear-ended by Castro, who was driving an empty Kenworth gravel hauler. The impact caused Williams' driver seat to fail, and he was thrown head-first into the back seat, losing the use of his legs. Williams sued Toyota on theories of negligence and strict products liability.

On August 14, 2008, the Defendants timely designated Dr. Fowler as an expert witness to offer opinions on "metallurgical analysis and the performance of the 4Runner's driver's seat during the accident" and submitted his expert report. On September 15, 2008, Plaintiffs' expert Steve Syson issued a supplemental report addressing perceived shortcomings in a number of expert reports, including the one produced by Fowler. On October 15, 2008, Fowler produced a supplemental report explaining his expert findings in more detail. The Plaintiffs attack Fowler's expert conclusions as not being based on any reliable methodology as required by *Daubert*. The Defendants respond that Fowler's report does contain such methodology and that his opinions should be presented to the jury for evaluation

## II. DISCUSSION & ANALYSIS

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590-93 (1993), the Supreme Court instructed district courts to function as gatekeepers and determine whether expert testimony should be presented to the jury. District courts must ensure that a proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Moreover, in order to be admissible, expert testimony must be "not only relevant, but reliable." *Daubert*, 509 U.S. at 589. The *Daubert* analysis "appl[ies] to all species of expert testimony . . . ." *United States v. Tucker*, 345 F.3d 320, 327 (5th Cir. 2003); *accord Kumho Tire Co.*

*v. Carmichael*, 526 U.S. 137 (1999).

In deciding whether to admit or exclude expert testimony, district courts should consider numerous factors. *Daubert*, 509 U.S. at 594. First, the court should consider the question of whether a theory or technique can be tested and has been tested. *Id*. at 593. Second, the court should examine whether the theory or technique at issue "has been subjected to peer review and publication." *Id*. Third, the court should normally consider "the known or potential rate of error" of the challenged method. *Id*. at 594. Fourth, the court may ascertain the degree of acceptance of a particular method or technique. *Id*. In evaluating *Daubert* challenges, district courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Id*.

The *Daubert* factors are not "a definitive checklist or test." *Id*. at 593. As the Court has emphasized, the *Daubert* framework is "a flexible one." *Id*. at 594. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Exploration & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (internal citation omitted).

The Fifth Circuit has stated that a district court did not abuse its discretion in striking supplemental expert opinions when allowing the "plaintiff to add more material now and [to] create essentially a new report would prejudice the defendants, who would then have to get an expert to address these last-minute conclusions, and thus disrupt the trial date." *Reliance Ins. Co. v. La. Land & Exploration Co.*, 110 F.3d 253, 257-58 (5th Cir. 1997). Thus, expert report supplementation is an improper vehicle through which to give "ineffective litigants a second chance" at presenting their case. *Id*. at 258. Parties are not entitled to provide a bare bones report at the outset only to later bombard their adversary with the full extent of their experts' opinions. *See McKnight v. Purdue*

*Pharma Co.*, 422 F. Supp. 2d 756, 758 (E.D. Tex. 2006). Instead, the initial expert report is to be "detailed and complete" and bereft of "sketchy and vague" information. FED. R. CIV. P. 26 Advisory Committee Note, 1993.

Dr. Fowler's supplemental report clearly goes beyond mere supplementation. His report of August 14 consists of descriptions of observational findings and photographs of the subject 4Runner. (Defs'. Resp. Ex. D.) Dr. Fowler's supplemental report, on the other hand, begins by mentioning metallurgical analysis consisting of optical microscopy and scanning electron microscopy performed on seats similar to the driver's seat in Williams' 4Runner. (*Id*. at Ex. G.) Dr. Fowler determined that the metals comprising the seats he tested were of uniform quality, indicating that the seat in Williams' 4Runner would be expected to be of the same quality. What the Defendants cannot explain is why this information was not contained in Dr. Fowler's initial report. All of the information and processes would have been available to Dr. Fowler in time to be included in his August 14 report. The Defendants suggest that they were not on notice of alleged metallurgical defects in the seat until after Syson's September 15 rebuttal report. (*Id*. at 5.) However, Syson's rebuttal report merely points out the lack of methodology to sustain any opinions on the metallurgy of the seat's materials. Also, as discussed above, the Defendants originally designated Dr. Fowler to testify regarding "metallurgical analysis." The Defendants were clearly aware of any metallurgy issues when they made the expert designation. Why Dr. Fowler waited until two months later to offer any metallurgical analysis is contrary to one's intuition, and more importantly, to the dictates of Rule 26.

Accordingly, the court looks to Fowler's report of August 14, 2008 in conducting its *Daubert* analysis. Dr. Fowler's report begins by describing the circumstances of the accident and the resulting

damage done to the driver's seat. The report goes on to discuss observations regarding the interior structures of the driver's seat. Dr. Fowler then describes the damage done to the exterior of the 4Runner. Finally, Dr. Fowler makes conclusions regarding the forces to which the driver's seat was subjected and its resulting behavior, and he states that there was not any indication of a manufacturing or metallurgical defect. What is absent from the report is any discussion of methodology, relevant literature or scientific testing. The Fifth Circuit has stated that "a reliable methodology is in all instances mandatory . . . and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007). Dr. Fowler's conclusions due not appear from the report to be based on a reliable methodology. The report contains a series of subjective opinions, which have long been insufficient for the admission of purported expert testimony. *Id*. (citing *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987)).

### III. CONCLUSION

Based on the foregoing, the court finds that Dr. Fowler's expert opinions lack the indicia or reliability that would allow their admission under Rule 702. Accordingly, the court is of the opinion that the "Plaintiffs' Motion to Exclude Expert Testimony of Dr. Gary Fowler" (de # 70) should be, and hereby is, GRANTED.

IT IS SO ORDERED.

**SIGNED this the 6th day of February, 2009.**

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE